## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| JOHN DOE, ) | |
| ) | |
|      Plaintiff, ) | CIVIL ACTION NO. _____ |
| ) | |
| v. ) | |
| ) | |
| LINCOLN-SUDBURY REGIONAL ) | |
| SCHOOL DISTRICT, LINCOLN- ) | |
| SUDBURY REGIONAL SCHOOL ) | |
| DISTRICT COMMITTEE, ) | |
| BELLA WONG, AIDA RAMOS, ) | |
| PETER ELENBAAS, JASON MEDEIROS, ) | |
| SANDY CRAWFORD, ELEANOR BURKE) | |
| and LESLIE PATTERSON, ) | |
| ) | |
|      Defendants. ) | |
| _____) | |

## COMPLAINT

This is a complaint for monetary damages, and for injunctive and declaratory relief for injuries that Plaintiff John Doe ("John," "Doe" or "Plaintiff") has sustained as a result of the wrongful actions of the Defendant Lincoln-Sudbury Regional School District and its administrators, for violations of the due process requirements of the Fourteenth Amendment to the U.S. Constitution and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq*, pursuant to 42 U.S.C. § 1983.

## THE NATURE OF THIS ACTION

1. In late November 2013, Plaintiff John Doe, then a 14 year-old high school freshman at Lincoln-Sudbury Regional High School ("LSRHS"), was notified of allegations that he had engaged in "inappropriate sexual behavior" and "physical assault" for a consensual sexual

encounter initiated by a former girlfriend, 15 year-old Jane Roe, and involving another boy, that occurred on a campus field near a school football game earlier that month. Doe was brought before a high school disciplinary panel for a hearing but was not notified that he could be found responsible for "sexual harassment" under Title IX or that this was a Title IX hearing. Prior to the hearing, neither the Lincoln-Sudbury Regional School District ("the District"), nor the Lincoln-Sudbury Regional School District Committee ("the Committee"), nor the LSRHS provided adequate training or supervision to those employees responsible for conducting hearings into sexual assault and sexual harassment as required by due process and Title IX.

2. At a disciplinary hearing on December 5, 2013, Doe was not afforded the critical procedural protections required by due process and afforded under Title IX or under the District's policies and procedures then in place, including the right to present witnesses, to question or confront witnesses against him, or to be informed of the applicable standard of proof. After the hearing, even though Doe was never notified that he could be found responsible for "sexual harassment," the District found him responsible as an "Instigator of Both Physical and Sexual Harassment," and suspended him for sixteen school days, after which he was precluded from participating in LSRHS sports and extracurricular activities for a period of time, was stigmatized as a "rapist" by classmates, and was left with a permanent school record that continues to contain a finding that he was guilty of "sexual harassment."

3. Doe's family requested that the District reconsider its decision, and eventually on October 1, 2015, the school sent Doe a letter describing the results of what it now termed a "Title IX investigation." The letter stated that "[u]pon thorough interviews and reviews of reports, Lincoln-Sudbury Regional High School investigation has been determined inconclusive," that "[t]he District was not able to reliably determine whether or not the alleged incident reported by

the compliant [sic] actually occurred as described," and that "at this time, with regard to Title IX, Lincoln-Sudbury will not take any further action with regard to the alleged incident." Internal LSRHS communications subsequently obtained by Doe's family pursuant to the federal Freedom of Information Act revealed that the District's investigation found that the witnesses, including Roe, had provided "conflicting information," that the Sudbury Police Department, after a full investigation, "declined to bring any charges" against Doe and the other male student "due to conflicting information[;]" that Doe had provided LSRHS with a version of events that "varied widely" from Roe's; that a thorough review of Roe's text messages with Doe, the other male, and her then-girlfriend and of her Facebook posts revealed that Roe's "version of events was not entirely truthful[;]" that they "didn't feel they had sufficient evidence that exactly what Roe alleged had happened, whether there was actually a sexual assault, whether or not there was consent[;]" and, that "[t]herefore, they didn't feel they had grounds that the two boys committed an offense under Title IX."

4. In the meantime, and unbeknownst to Doe and his family, in April of 2014 Roe had filed a complaint with the United States Department of Education's Office of Civil Rights ("OCR") complaining that, among other things, LSRHS never notified her of the results of its investigation into her allegations against Doe, and, as a result, OCR opened a case against the District to investigate its compliance with Title IX. Following the issuance of the October 1, 2015 letter, which did sufficiently notify Roe of the results of its Title IX investigation, Roe further complained to OCR about the substance of the findings.

5. Nearly two years later, on August 24, 2017 — without prior notice to Doe that Roe had appealed the results of LSRHS's 2015 Title IX investigation and apparently as a result of a pressure campaign by OCR — the District sent Doe and his family another letter stating that the

District was now "writing to clarify the results" of its "Title IX investigation[,]" that these results were "consistent with" the original findings made on December 6, 2013" and that the October 1, 2015 letter was sent in "error."  No further explanation was provided for the District's about-face.

6. The public records requests by Doe and his family also generated communications between the District and OCR that revealed that between October 2015 and August 24, 2017, OCR refused to accept the District's Title IX findings that it could not reliably determine whether Roe's allegations were true and kept open its case against the District. Ultimately, OCR informed the District that it would resolve the case favorably if the District retracted the October 1, 2015 decision letter. Meanwhile, over that same period of time, the District had become increasingly concerned with adverse media reports listing LSRHS as being under active investigation by OCR for failing to comply with Title IX. Finally, in 2017, the  District told OCR that that it would "do anything possible to resolve ASAP" the open OCR complaint, and ultimately sent drafts of the August 24, 2017 letter retracting the October 1, 2015 findings to OCR for its revision and approval. The District thus succumbed to OCR's pressure campaign to reverse its Title IX finding, presumably to protect its public reputation and federal funding that were otherwise in jeopardy.

7. In summary, the District and its named defendant-employees violated Doe's constitutional rights first by failing to ensure that he received adequate due process protections at his initial hearing in December 2013, and then again by retracting the favorable results of the District's Title IX Investigation because they wanted to resolve the OCR complaint against the District, and even though they knew the retraction disregarded the truth and would harm Doe.

## PARTIES

8. Plaintiff John Doe[1] is an individual residing in Massachusetts. Plaintiff attended Lincoln-Sudbury Regional High School ("LSRHS") as a student between September 2013 and June 2017, when he graduated from LSRHS.

9. Defendant Lincoln-Sudbury Regional School District ("District" or "Lincoln-Sudbury") is the corporate name of the governing body of the LSRHS, a public high school organized under Massachusetts law for children residing in the towns of Lincoln and Sudbury, Massachusetts, and which maintains a principal address of 390 Lincoln Road, Sudbury, Massachusetts. Upon information and belief, LSRHS is a recipient of federal education funds.

10. Defendant Lincoln-Sudbury Regional School District Committee ("Lincoln-Sudbury School Committee" or "School Committee") is the policy and final decision-making body for the Lincoln-Sudbury Regional School District, and which maintains a principal address of 390 Lincoln Road, Sudbury, Massachusetts.

11. Defendant Bella Wong ("Wong") is an individual who in her official and individual capacities, worked for the District and LSRHS, which maintains a business address of 390 Lincoln Rd., Sudbury, MA. At all relevant times, Wong was the Superintendent of Schools in the District as well as the Principal of LSRHS. Wong is sued in her individual and official capacities. All of Wong's activities described in this Complaint were under color of Massachusetts law.

---

[1] Contemporaneously with the filing of this Complaint, Plaintiff has filed a Motion for Permission to Proceed Under Pseudonym as "John Doe" given the extremely sensitive and private nature of the matters alleged herein. Plaintiff also seeks permission to refer to the female complainant in the underlying student disciplinary proceeding as "Jane Roe" and to use pseudonyms for student witnesses identified herein. As more fully set forth in the Motion, Defendants are fully aware of the actual identities of John Doe, Jane Roe and student witnesses; and they will not be prejudiced in any way by Plaintiff's use of those pseudonyms for public filings.

12. Defendant Aida Ramos ("Ramos") is an individual who in her official and individual capacities, worked for the District and LSRHS, which maintains a business address of 390 Lincoln Rd., Sudbury, Massachusetts. At all relevant times, Ramos was the Director of Student Services at LSRHS and the Title IX Co-Chair. Ramos is sued in her individual and official capacities. All of Ramos's activities described in this Complaint were under color of Massachusetts law.

13. Defendant Peter Elenbaas ("Elenbaas") is an individual who in his official and individual capacities, worked for the District and LSRHS, which maintains a business address of 390 Lincoln Rd., Sudbury, Massachusetts. At all relevant times, Elenbaas was the LSRHS Director of Activities and Athletics and the Title IX Co-Chair or former Title IX Co-Chair. Elenbaas is sued in his individual and official capacities. All of Elenbaas's activities described in this Complaint were under color of Massachusetts law.

14. Defendant Leslie Patterson ("Patterson") is an individual who in her official and individual capacities, worked for the District and LSRHS, which maintains a business address of 390 Lincoln Rd., Sudbury, Massachusetts. At all relevant times, Patterson was the Housemaster of the East House at LSRHS, the House to which Plaintiff Doe was assigned at all relevant times. Patterson is sued in her individual and official capacities. All of Patterson's activities described in this Complaint were under color of Massachusetts law.

15. Defendant Jason Medeiros ("Medeiros") is an individual who in his official and individual capacities, worked for the District and LSRHS, which maintains a business address of 390 Lincoln Rd., Sudbury, Massachusetts. At all relevant times, Medeiros was the Housemaster of the North House at LSRHS. Medeiros is sued in his individual and official capacities. All of Medeiros' activities described in this Complaint were under color of Massachusetts law.

6

16. Defendant Sandy Crawford ("Crawford") is an individual who in her official and individual capacities, worked for the District and LSRHS, which maintains a business address of 390 Lincoln Rd., Sudbury, Massachusetts. At all relevant times, Crawford was the Housemaster of the West House at LSRHS.  Crawford is sued in her individual and official capacities. All of Crawford's activities described in this Complaint were under color of Massachusetts law.

17. Defendant Eleanor Burke ("Burke") is an individual who in her official and individual capacities, worked for the District and LSRHS, which maintains a business address of 390 Lincoln Rd., Sudbury, Massachusetts. At all relevant times, Burke was the Housemaster of the South House at LSRHS. Burke is sued in her individual and official capacities. All of Burke's activities described in this Complaint were under color of Massachusetts law.

## JURISDICTION AND VENUE

18. Subject matter jurisdiction for this action is proper under 28 U.S.C. §§ 1331 and 1343(a)(4), because it seeks equitable and monetary relief under an act of Congress, 42 U.S.C. § 1983, enacted for the protection of Plaintiff's federal civil and constitutional rights, including his rights to due process under the law as a public school student, and the rights afforded to him by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* This Court has original federal question jurisdiction over the claims.

19. Personal jurisdiction over the Defendants named in this action is proper because they reside in the Commonwealth of Massachusetts, and the cause of action arose in Massachusetts.

20. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

**A. The Alleged November 1, 2013 Incident.**

21. In September of 2013, John Doe and Jane Roe were enrolled as students at LSRHS. Roe was 15 years old and enrolled in the tenth grade. Doe was 14 years old and enrolled in the ninth grade.

22. For a period of several weeks during the month of September 2013, Doe and Roe were involved with one another in a boyfriend-girlfriend relationship.

23. On or about October 1, 2013, Doe broke off his relationship with Roe.

24. In or about late September or early October 2013, Roe began dating another female student, (Female Student #2), who was also an enrolled in the ninth grade at LSRHS.

25. Doe and Female Student #2 were friends.

26. Doe was supportive of the relationship between Roe and Student Female #2.

27. On or about November 1, 2013, Roe and Doe attended an evening football game held at the LSRHS campus in Sudbury.

28. Doe arrived by himself and did not sit with Roe during the football game.

29. During the football game, Roe texted Doe, telling him that she wanted to speak with him, and that he should meet her at the lacrosse wall.

30. Doe went to the lacrosse wall, and shortly thereafter, Roe arrived with two other male students (Male Student #2 and Male Student #3).

31. Male student #3 left the lacrosse wall area, and Roe, Doe and Male Student #2 remained and played a game of truth or dare. After playing truth or dare, Male Student #2 sat on a set of bleacher seats next to the lacrosse field, and Roe sat on his lap while he smoked a cigarette. Doe was standing next to them. Roe kissed Doe. Roe touched Doe's groin area on the

8

outside of his pants. Male Student #2 and Roe engaged in further sexual touching. While this sexual contact was occurring, Roe was giggling and "Facetiming" on her phone with her girlfriend, Female Student #2. After ending the call with Female Student #2, Roe began to cry and left the area.

32. On or about November 7, 2013, Roe filed a complaint with an LSRHS counselor, alleging that she had been sexually assaulted by Male Student # 2 and Doe on the evening of Friday, November 1, 2013. Roe alleged that Doe restrained Roe while Male Student #2 digitally penetrated her.

33. On or about November 12, 2013, Defendant Patterson asked Doe's mother to keep Doe home from school the next day. This was the first time Doe and his parents were informed about Roe's allegations.

34. On or about November 12, 2013, Roe sought and was granted temporary restraining orders ("ROs") against Doe and Male Student #2, from the Middlesex County Juvenile Court in Framingham, Massachusetts.

35. On or about November 20, 2013, the Middlesex County Juvenile Court held a hearing on the extension of the ROs. Roe testified and was questioned at this hearing, where she gave varying accounts of what occurred on November 1, 2013 with Doe and Male Student #2.

36. There were numerous and substantial discrepancies between Roe's description of the alleged encounter to the LSRHS counselor and the testimony Roe gave during the restraining order hearings.

37. In addition, Female Student #2, who, via Facetime, witnessed the November 1, 2013 encounter as it occurred, provided information to LSRHS that contradicted Roe's allegations. In a Facebook message to Doe, Female Student #2 described Roe as having "started the sexual shit,

she was all up on y'all and kissing you and on [Male Student #2's'] lap and all so she seduced you two."

38. Roe also gave a statement about the November 1, 2013 incident to the Sudbury Police Department.

39. Doe gave a statement to the Sudbury Police regarding the November 1, 2013 incident.

40. The Sudbury Police Department and the Middlesex County District Attorney's Office did not bring any charges against Doe or Male Student #2.

**B. Lincoln-Sudbury's Rules Governing Disciplinary Proceedings and Its Rules Governing Title IX Discrimination Grievance Procedures in 2013.**

41. On or about February 5, 2013, the District issued a publication titled "Program of Studies and Policy Handbook" ("2013 Handbook"). An excerpt consisting of pp. 1-27 of the 2013 Handbook is attached hereto as **Exhibit 1.**

42. Upon information and belief, the 2013 Handbook was the document that set forth LSRHS's policies and procedures that applied to the investigation and adjudication of Roe's complaint against Doe in the fall of 2013.

43. The 2013 Handbook contained a "Declaration of Compliance," which declared that LSRHS complied with the requirements of Title IX of the Educational Amendments of 1972 (20 U.S.C. §§ 1681, *et seq.*), which prohibits discrimination on the basis of sex.

44. The 2013 Handbook also contained a "Non-Discrimination Policy" which stated that "[n]o person shall be excluded from, harassed or discriminated against in admission to the Lincoln-Sudbury Regional School District, for admittance to state and federally funded grant programs, or in obtaining the advantages, privileges, and courses of study presented in this school, on account of race, color, gender, disability, sexual orientation, religion, or national origin."

10

45. The 2013 Handbook contained a section titled "Lincoln-Sudbury Regional High School Discipline Code (Approved by School Council 1/15/11)," which included the following rights and procedures:

### DUE PROCESS

Students accused of an infraction have the right to due process. This means they have the right to respond to the charge and explain their actions and perceptions. Students have the right to appeal disciplinary decisions to the Superintendent/Principal.

### EXPULSION HEARINGS

For offenses involving drugs, assault on a staff member, the possession of weapons, or other very serious offenses, there will be a hearing front of at least three Administrators. The student shall be notified in writing about this hearing and has the right to bring advocates to the hearing. If the committee of Administrators recommends expulsion, students have the right to appeal the decision to the Superintendent/Principal within ten days.

46. The 2013 Handbook stated that "sexual harassment" is a form of unlawful discrimination.

47. The 2013 Handbook directed that in cases involving complaints of sexual harassment, the complaint would first be investigated by two administrators (male and female), who together would interview all parties involved in the complaint and respond withing 15 days of the interview. If the administrators' response did not satisfactorily resolve the issue, the complainant could request a hearing before the Superintendent/Principal.

48. The 2013 Handbook contained "Discrimination Grievance Procedures," applicable to discrimination complaints. The "Introduction" to these procedures stated: "The School Committee has designated a district administrator as coordinator for each federal and state statute regarding discrimination. Their responsibility is to act as an advisor to any/all parties at any stage of these procedures to ensure that proper steps are followed."

49. The Discrimination Grievance Procedures instructed that complainants could initially file complaints under "Informal Procedures," followed by "Formal Procedures" if the complainant was not satisfied.

50. The "Formal Procedures" section in the Discrimination Grievance Procedures stated that, upon the filing of the complainant's written complaint:

> By law, you MUST be given a hearing and MUST receive a written response. **All hearings and investigations must follow due process procedures that guarantee that both parties will have the right and opportunity to present evidence and witnesses and to question witnesses at all steps.** Confidentiality will be maintained by the involved parties at all levels. [emphasis supplied]

> The Superintendent/Principal will conduct an investigation of the formal complaint and give a written decision to both parties and to the appropriate coordinator. See page 4 for specific person.

> If you disagree with the decision of the Superintendent/Principal, you must appeal the decision in writing, to the School Committee within five school days after you receipt of written decision.

> The School Committee will, within twenty days of the receipt of the grievance, investigate the grievance and give a written decision. The School Committee will submit a copy of the decision and the reasons for the decision to both parties, the Superintendent/Principal and the coordinator.

51. The 2013 Handbook on page 4 stated that the District's Coordinator for "Title IX of the Educational Amendments of 1972 (Prohibition of discrimination on basis of sex)" was "Nancy O'Neil x3100."

52. The 2013 Handbook's Discrimination Grievance Procedures stated that complaints alleging violations of Title IX could also be filed with the Office of Civil Rights, Department of Elementary and Secondary Education.

53. The 2013 Handbook did not state that the Discrimination Grievance Procedures did not apply to investigations of, or hearings concerning, allegations of sexual harassment implicating Title IX's prohibitions against sexual discrimination in education.

54. The 2013 Handbook did not state any standard of proof, including the preponderance of evidence standard, that was to be applied by the factfinder(s) in Title IX investigations and hearings.

### C. Lincoln-Sudbury's Investigation, the December 5, 2013 Hearing, and the December 6, 2013 Letter Notifying Doe That His Role in the November 1, 2013 Incident Was as an "Instigator of Both Physical and Sexual Harassment."

55. On or about November 22, 2013, following the closure of the criminal investigation by the Sudbury Police Department, Defendant Patterson informed Plaintiff Doe's parents that Lincoln-Sudbury was conducting its own investigation of Roe's allegations.

56. On December 2, 2013, Defendant Patterson sent Doe's parents a letter ("December 2, 2013 charge letter") in which she stated in part:

> This is a follow up letter to the email I sent you earlier today. It is to officially notify you that the school's investigation into the incident at the football game on 11/1 has led us to the decision that we will need to hold a discipline hearing per the L-S Program of Studies and Policy Handbook. ('For offenses involving drugs, assault on a staff member, the possession of weapons, or other very serious offenses, there will be a hearing in front of a committee of at least three Administrators . . . .') Given the information I currently have, I am categorizing [John's] offenses as physical assault and inappropriate sexual behavior."
>
> [John] is suspended pending this hearing.  . . . [John] has the right to bring advocates to the hearing; please let me know as soon as you know, who will be attending. If [John's] attorney plans to be present, we need to know this as soon as possible so that the district's lawyer can also arrange to be present.

A redacted copy of the December 2, 2013 Charge Letter is attached hereto as **Exhibit 2**.

57. On December 4, 2013, Doe's counsel sent a letter to the District's counsel in which he asserted that Roe's allegations against Doe were false. Doe's counsel provided background

information concerning Doe's and Roe's relationship. He explained that the November 1, 2013 encounter with Doe was consensual and that it was Roe who initiated the sexual behavior that night with Doe. He enclosed with his letter a screen shot of a Facebook message where Female Student #2, who had been Facetiming with Roe during the incident, confirmed that Roe had initiated the sexual behavior.

58. On December 5, 2013, LSRHS held a hearing concerning Roe's allegations, which was attended by the four Housemasters, (Defendants Patterson, Medeiros, Burke and Crawford), John Doe, his parents, Doe's attorney, and an attorney for the District.

59. No witnesses, including Roe, Male Student #2, Male Student # 3, Female Student # 2, or the counselor to whom Roe initially complained, were present at the December 5, 2013 hearing.

60. At the hearing, Doe's counsel presented Doe's defense consistent with the information and evidence he provided previously in his December 4, 2013 letter to the District's counsel. Doe's mother also told the administrators at the hearing that Roe had just previously made allegations that in October 2013, she had been raped by Male Student #2, and that to her knowledge those allegations and not been investigated and no charges had been filed.

61. On or about December 6, 2013, Defendant Patterson sent a letter to Doe's parents, copying the "Housemasters" and "Bella Wong, Principal/Superintendent," describing the District's decision ("December 6, 2013 decision"), stating:

> As you know, it was reported to an L-S clinical counselor that [John] restrained a female student while another boy digitally penetrated her while at an L-S football game, on the evening of November 1, 2013. After investigating this allegation, [John's] offenses were categorized as physical assault and inappropriate sexual behavior, and it was determined that a hearing was necessary.

> The purpose of this letter is to outline the decision of the Housemasters following [John's] December 5th discipline hearing. We believe that there is sufficient

14

evidence that an interaction of an egregious nature did occur on the evening of November 1st, and that [John's] role in the incident was one that substantially violated one of the core values of L-S (promotion of caring and cooperative relationships among all members of the community). We believe that [John] was an instigator of both physical and sexual harassment. The Housemasters determined that the gravity of the conduct that [John] engaged in warrants him to be separated from the L-S community, for a significant period of time. (Per L-S Discipline Code, *students who commit particularly egregious offenses will be excluded from the L-S community for an appropriate period of time.*) [John], therefore, is suspended through January 1, 2014. [italics in original]

L-S will provide [John] with tutoring during the time of his suspension. Anne O'Reilly, Assistant to the Director of Student Services will be contacting you shortly to coordinate this.

Upon [John's] return to school, he will need to spend all of his free blocks in a supervised study (location to be determined) and he may not participate in any extra-curricular activities. Assuming that he is able to demonstrate a pattern of good behavior, these restrictions will be reconsidered at the start of Semester 2. Also, [John] must continue to meet with an L-S clinical counselor/intern and we strongly recommend that he transition to the ACE program. Finally, we would like [John] to receive some education from our Mentors in Violence Prevention group. Details on this piece still need to be finalized.

If you wish to appeal this decision, your route of appeal is through Superintendent/Principal Bella Wong. You can set up an appointment to meet with her by calling his assistant, Francy Zingale, at extension 2370.

A redacted copy of the December 6, 2013 Decision is attached hereto as **Exhibit 3**.

62. Pursuant to the December 6, 2013 decision, Doe was suspended for a total of sixteen school days.

63. Pursuant to the December 6, 2013 decision, Doe was not permitted to participate in any extracurricular activities, including trying out for the LSRHS athletic teams.

64. Pursuant to the December 6, 2013 decision, Doe met with a private clinical counselor.

65. Pursuant to the December 6, 2013 decision, Doe participated in the Mentors in Violence Prevention Group.

**D. John Doe's Complaints to Lincoln-Sudbury About the December 6, 2013 Decision and Lincoln-Sudbury's Issuance of the October 1, 2015 Letter Which Notified Doe That, "Upon Thorough Interviews and Reviews of Reports," the Results of Lincoln-Sudbury's Title IX Investigation Were "Inconclusive" and "[t]he District was Not Able to Reliably Determine Whether or not the Alleged Incident Reported by [Jane Roe] Actually Occurred as Described."**

66. Beginning in or about December 2014, Doe's mother sent a number of requests to Defendants Patterson and Wong noting various errors in the proceedings leading to the December 6, 2013 disciplinary decision and requesting that Doe's record be expunged or corrected.

67. On December 18, 2014, Doe's mother emailed Defendant Wong, requesting a retraction of the December 6, 2013 findings from Doe's record.

68. On January 6th, 2015, Defendant Wong responded to Doe's mother, inviting her to add any information to the record, and/or meet with Defendant Patterson to discuss objections to the record, and noting that she could appeal Patterson's decision with respect to any such requests to her (Wong).

69. On January 12, 2015, Doe's mother emailed Defendant Patterson and formally requested that the adverse findings be deleted from his record, including record of suspension. In support of this request, Doe's mother noted the several discrepancies in Roe's account of the incident.

70. On March 26, 2015, defendant Patterson emailed Doe's mother, stating: "all are on board with me editing the language in the behavior report, but the report will still exist, as will the record of suspension."

71. On April 9, 2015, Doe's mother sent a letter to Defendant's Wong and Patterson, appealing the decision not to expunge Doe's record.

72. On April 17, 2015, Doe's parents met with Defendant Wong regarding their appeal of the denial to reverse the December 6, 2013 disciplinary decision.  During this meeting, Wong told Doe's parents that legal counsel had advised her not to modify or change Doe's record, but that they would reevaluate information and talk to legal counsel again. Wong also suggested during this meeting that on his common application for college admission Doe should not disclose that he had been suspended.

73. On May 4, 2015, Doe's parents wrote to Wong concerning Doe's appeal and his school record. Doe's parents stated that, in connection with Doe's college applications, he would not be checking the "No" box concerning his suspension unless LSRH cleared it from his record. Doe's parents requested that the suspension be expunged from Doe's file based on the information that Roe was not telling the truth about the November 1, 2013 incident. Doe's parents also asked Wong how long student records were maintained after graduation and whether the Department of Education was provided with the names of students involved in these types of incidents.

74. Later in May 2015, Wong communicated with Doe's mother to inform her she was still speaking with the District's counsel.

75. On October 1, 2015, the District sent a letter to Doe's parents, signed by defendants Ramos and Elenbaas in their capacities as the Title IX Co-Chairs ("the October 1, 2015 letter").

In the October 1, 2015 letter, Ramos and Elenbaas stated:

This letter is to inform you of the results of a Title IX investigation that took place in the Fall of 2013 after a student reported an alleged incident that involved your son [John].

**Upon thorough interviews and reviews of reports, Lincoln-Sudbury Regional High School investigation has been determined inconclusive. The District was not able to reliably determine whether or not the alleged incident report by the compliant [sic] actually occurred as described. Hence, at this time, with**

**regard to Title IX, Lincoln-Sudbury will not take any further action with regard to the alleged incident.** [emphasis supplied]

As a result of factors unrelated to the investigation, all of the Lincoln-Sudbury students allegedly involved in the 2013 incident are now attending different schools. There is no reason, therefore, that [John] should have any further contact with the compliant [sic] or the other alleged participant in school.

If you have any questions regarding this investigation, please feel free to contact either of us.

A redacted copy of the October 1, 2015 Letter is attached hereto as **Exhibit 4**.

76. The October 1, 2015 letter was shown to Doe after his parents received it in the mail.

**E.   The August 24, 2017 Letter from Lincoln-Sudbury to John Doe and His Parents Which Retracted the Title IX Investigation Findings in the October 1, 2015 Letter and Reinstated the December 6, 2013 Findings.**

77. On or about August 24, 2017, after Doe had graduated from LSRHS and approximately one year and eleven months after receiving the October 1, 2015 letter, the District sent a second letter signed by defendant Ramos as "Co-Chair Title IX," and defendant Elenbaas as "Co-Chair Title IX (Former)" to Doe and his parents ("August 24, 2017 letter").

78. The August 24, 2017 letter stated:

We are writing to clarify the results of Lincoln-Sudbury's ("L-S") November 2103 Title IX investigation. The results of the Title IX investigation are consistent with the letter sent to you on December 6, 2013, not the letter sent to you on October 1, 2015. I apologize for this delay in notification. The error was recently brought to our attention.

As stated in the December 6, 2013 letter, it was reported to an L-S clinical counselor that [John] restrained a female student while another boy assaulted her at an L-S home football game, on the evening of November 1, 2013. After investigating this allegation, [John's] offenses were categorized as physical assault and inappropriate sexual behavior, and it was determined that a hearing was necessary.

> Following [John's] December 5, 2013 discipline hearing, we found there was
> sufficient evidence that an interaction of an egregious nature did occur on the
> evening of November 1st, and that [John's] role in the incident was one that
> substantially violated one of the core values of L-S (promotion of caring and
> cooperative relationships among all members of the community).
>
> Please feel free to contact me [sic] with any questions on this investigation.

A redacted copy of the August 24, 2017 Letter is attached as **Exhibit 5.**

79. On September 12, 2017, Doe's mother emailed defendant Ramos to ask why the

District had sent the August 24, 2017 letter.

80. On September 14, 2017 Ramos responded to Doe's mother via email, copying

defendant Elenbaas and Doe's father on the email. In her email, Ramos informed Doe's mother

that "the case was reviewed as part of an audit, which identified the difference between the two

letters, and requested that the school district issue the new letter to you. The entity conducting

the audit has now closed its review and determined all is in order."

**F. The United States Department of Education's Office of Civil Rights ("OCR")
Investigation in Which Lincoln-Sudbury Repeatedly Informed OCR of the Evidence
and the Reasons Why the Results of its Title IX Investigation Into the November 1,
2013 Incident Were "Inconclusive" and Why Lincoln-Sudbury Could Not Reliably
Determine Whether or not the Alleged Incident Reported by Jane Roe Actually
Occurred as Described.**

81. After the issuance of the August 24, 2017 letter, Doe learned that several years

earlier, on or about April 30, 2014, Roe had filed a complaint with the United States Department

of Education's Office of Civil Rights ("OCR"), alleging that LSRHS had violated Title IX in its

handling of the investigation of the November 1, 2013 incident ("Roe's Title IX complaint").

82. Doe acquired and learned details of OCR's investigation into Roe's Title IX

complaint, including details of communications between OCR and the District's counsel and

LSRHS's administrators concerning the District's well-founded explanations for the findings and

19

conclusions set forth in the October 1, 2015 letter, from documents obtained from OCR pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. 552, *et. seq.*

83. On or about June 18, 2014, OCR opened its formal investigation into Roe's Title IX complaint. Defendant Wong was notified by OCR of the investigation on or about that date.

84. On June 18, 2014, OCR sent a data request to the District seeking information concerning Roe's allegations. OCR's data request asked for the District's Title IX grievance procedures and materials regarding Roe's allegations and investigation, including all investigative documents.

85. Question 4 of OCR's data request to the District asked for the following information:

A written explanation for the District's decisions, including the following:

a. Interim measures offered, provided, or denied;
b. Description of any investigation, the outcome, and actions taken as a result;
c. How the District provided notice of the outcome of any investigation to the Complainants;
d. If the District found harassment that created a hostile environment, the steps taken to end it, prevent its recurrence, and remedy the effects.

86. Question 5 of OCR's data request asked for: "Any additional information that you think would be beneficial for OCR to consider in the course of this investigation."

87. On July 7, 2014, the District's legal counsel responded on behalf of the District to OCR's data request for information concerning Roe's Title IX complaint.

88.  In response to OCR's data request for a copy of LSRHS's grievance procedures, the District's counsel provided OCR with an excerpt from the LSRHS "Program of Studies and Policy Handbook (Rev. April 10, 2014)" ("2014 Handbook"). This excerpt from the 2014 Handbook contained the exact same "Discrimination Grievance Procedures" as appeared in the 2013 Handbook.

89. In response to Question 4 of OCR's data request, the District's counsel described the

District's findings concerning Roe's allegations made against Doe and Male Student #2

concerning the November 1, 2013 incident:

> Due to conflicting information between []'s[2] report, the report of Male Student
> #1[3], and the report of Female Student witness, **Lincoln-Sudbury did not feel
> that it had enough evidence to confirm whether the incidents on []
> constituted sexual harassment, sexual assault, physical assault, and/or
> consensual sexual activity.** The Sudbury Police Department, who were
> immediately notified and delayed the school-based investigation, also declined to
> bring any charges against Male Student #1 or Male Student #2 due to conflicting
> information. As described in A5, *infra*, Lincoln-Sudbury did feel there was
> sufficient evidence to support that Male Student #1 and Male Student #2 had
> engaged in inappropriate conduct in violation of the core values of the District.
> [emphasis supplied].

90. In response to Question 5 of OCR's data request, the District's counsel further

described the District's findings concerning Roe's allegations made against Doe and Male

Student #2 concerning the November 1, 2013 incident:

- On approximately November 22, 2013, []'s family provided Lincoln-Sudbury
  with screenshot images of text conversations between [] and Male Student #1
  on the night of the alleged incident; between [] and Male Student #1 after the
  alleged incident; and between [] and Male Student # 2 after the alleged
  incident. Both Male Student #1 and Male Student #2 obtained legal
  representation and refused to participate in any school interview or provide
  any verbal account of the alleged incident. On [] through counsel, Male
  Student #1 provided a written statement with his version of events from the
  night in question. Male Student #1 also provided screenshots of a Facebook
  conversation with the Female Student witness which indicated that []'s
  version of events was not entirely truthful. Ms. [] also interviewed the Female
  Student witness on [].

- Overall, after amassing the information gathered from all available sources,
  Lincoln-Sudbury's investigation concluded that []'s, Male Student #1's, and
  Female Student witness's accounts of the incident on [] all varied widely.
  Meanwhile, the Sudbury Police informed Lincoln-Sudbury that no charges

---

[2]  "[]" represents a redaction in a document produced by OCR in response to a FOIA request.

[3]  Plaintiff John Doe is referenced in the communications from LSRHS's counsel to OCR as "Male Student #1."

were being brought against either Male Student #1 or Male Student #2.

- On [] through counsel, Male Student #1 provided his version of events of the night in question. Male Student #1 also provided screenshots of a Facebook conversation with the Female Student witness which indicated that []'s version of events was not entirely truthful.

- **After the disciplinary hearing, the Housemasters determined that, due to conflicting evidence and information regarding the events of [], there was insufficient grounds to determine whether Male Student #1 had sexually harassed, sexually assaulted, physically assaulted, or engaged in consensual activity with [].** However, the Housemasters felt that there was sufficient evidence to indicate that Male Student #1 had substantially violated the core values of LSRHS. As a result, the Housemasters extended Male Student #1's []. [emphasis added].

91. Between July 2014 and October 2015, OCR personnel and counsel for the District continued to communicate about the status of OCR's investigation into Roe's Title IX complaint to OCR.

92. On or about September 30, 2015, OCR counsel notified the District's counsel that it was willing to resolve its investigation of Roe's Title IX complaint contingent on the District issuing a notice to the complainant of the outcome of the District's Title IX investigation, and requested that the District forward OCR a copy of the letter once it was issued.

93. On or about October 1, 2015, the District sent Doe's parents the Title IX decision letter signed by defendants Ramos and Elenbaas, described in Paragraph 75 above.

94. On or about October 1, 2015, the District also sent a similar letter to Roe's mother that described the results of the District's Title IX investigation, which stated: "After conducting thorough interviews and review of reports, Lincoln-Sudbury's investigation has been determined inconclusive. The District was not able to reliably determine whether or not the alleged incident reported by [Jane] actually occurred as described."

95. On or about October 1, 2015, the District also sent a letter to Male Student #2 and/or his parents that described the findings and results of the District's Title IX investigation in a manner identical to the findings and results described in the October 1, 2015 letter that the District sent to Doe's parents.

96. On October 2, 2015, the District's legal counsel emailed OCR counsel a copy of the October 1, 2015 letter that the District had sent to Doe's parents as well as copies of the October 1, 2015 letters sent to Roe's mother and to Male Student #2 and/or his parents. Counsel for the District also asked OCR counsel if the District needed to take any further action to get this resolved.

97. On October 5, 2015, after the issuance of the October 1, 2015 letters, OCR counsel emailed the District's legal counsel stating: "Sorry about the incoherent voicemail. The letters below show LS found sufficient evidence that what was alleged did occur, yet the letters you sent me on Friday say LS could not find whether the alleged incident occurred."

98. On or about October 6, 2015, the District's legal counsel responded to OCR counsel, informing OCR counsel that the District determined that Doe and Student # 2 had violated the student code of conduct and the standards of responsibility, but the District "**didn't feel they had sufficient evidence that exactly what Roe alleged had happened, whether there was actually a sexual assault, whether or not there was consent. Therefore, they didn't feel they had grounds that the two boys committed an offense under Title IX." [emphasis supplied]**

99. On or about October 14, 2015, Roe's parents wrote to the School Committee, formally requesting an appeal of the October 1, 2015 Title IX findings.

100. Upon information and belief, on or about October 27, 2015, Defendants Ramos and Elenbaas sent a letter in response to the appeal request lodged by Roe's parents and offered to meet with them to discuss their concerns regarding the Title IX findings.

101. Upon information and belief, on November 10, 2015, Roe's father emailed defendant Ramos stating that they had requested an appeal through the School Committee, and asked Ramos what was the purpose of the proposed meeting.

102. Upon information and belief, on or about November 11, 2015, defendant Ramos emailed Roe's father informing him that Title IX did not require schools to have an appeal process, but offered to meet with him and Roe's mother to discuss their concerns regarding the Title IX investigation and finding.

103. Upon information and belief, on or about November 12, 2015, one or both of Roe's parents emailed Ramos stating that an appeal was required under the District's Discrimination Grievance Procedures, pointing out that the District's discrimination procedures allowed for an appeal and that their claim under Title IX was a claim concerning discrimination.

104.  Upon information or belief, on or about November 12, 2015, Ramos responded by email to Roe's father, stating as follows:

> You are correct with regard to the Discipline Code. However, Title IX investigation is a completely different investigation that has nothing to do with the investigation done by the Housemasters related to discipline issues.
>
> What the Discipline Code speaks about is for an appeal for Disciplinary actions based on alleged discrimination. It is not about a Title IX investigation. Even though "the potential discipline investigation" and the Title IX investigation may occur simultaneously, there are 2 different processes.
>
> Hence, you could appeal any disciplinary action taken based on alleged discrimination, however, not a Title IX investigation. Regardless, [] and I are more than willing to meet with you to address your concerns regarding the Title IX investigation.

24

I hope this clarifies the difference between a disciplinary action and a Title IX investigation.

105. Upon information and belief, Roe's parents met with Defendants Ramos and Elenbaas to discuss the Title IX investigation and October 1, 2015 findings.

106. Upon information and belief, the School Committee reviewed the Title IX investigation involving Roe's allegations against Doe and the October 1, 2105 inconclusive findings decision. On or about February 3, 2106, the School Committee informed Roe's parents that the School Committee was satisfied that the District had conducted their investigation in a manner that was appropriate and non-discriminatory.

## G. OCR's Refusal to Accept Lincoln Sudbury's Explanation for its October 1, 2015 Title IX Findings and Background Concerning OCR's April 2011 Dear Colleague Letter.

107. After the School Committee affirmed the October 1, 2015 Title IX findings, Roe's mother subsequently complained to OCR's investigator about LSRHS's refusal to retract the findings set forth in the October 1, 2015 letter and the School Committee's response that the District had conducted their investigation into her daughter's allegations in a manner that was appropriate and non-discriminatory.

108. In response, OCR kept open its investigation, and requested additional information from the District.

109. Approximately three years prior to the filing of Roe's Title IX complaint, on April 4, 2011, the OCR issued a "Dear Colleague Letter" to educational institutions that are the recipients of federal funds ("regulated parties"), including public high schools such as LSRHS, to ensure that they were meeting their obligations under Title IX's prohibitions against discrimination on the basis of sex, which includes sexual harassment and sexual violence ("sexual misconduct").

110. The Dear Colleague Letter stated that, to comply with Title IX, federal funds recipients must "publish a notice of nondiscrimination and to adopt and publish grievance procedures. Because of these requirements, which are discussed in greater detail in the following sections, schools need to need to ensure that their employees are trained so that they know to report sexual harassment to appropriate school officials and so that employees with the authority to address harassment know how to respond properly."

111. The Dear Colleague Letter required schools to adopt a relatively low burden of proof – "more likely than not" – in cases involving sexual misconduct.

112. The Dear Colleague Letter stated that schools should "minimize the burden on the complainant."

113. The Dear Colleague Letter, while stating that state-supported schools must provide due process to the alleged perpetrator, also stated that schools should ensure that steps taken to accord due process to the alleged perpetrator do not restrict or unduly delay the Title  IX protections for the complainant.

114. The Dear Colleague Letter states that schools should give both parties the right to appeal a decision.

115. After the Dear Colleague Letter was published, many schools changed their sexual assault and sexual harassment policies and procedures.

116. The OCR treated the Dear Colleague Letter as binding on regulated parties for all practical purposes and pressured regulated parties to aggressively pursue investigations of sexual assaults on campus.

117. In June 2014, Former DOE Assistant Secretary for Civil Rights, Catherine J. Lhamon ("Lhamon"), testified at a Senate Hearing that that "some schools are still failing their

students by responding inadequately to sexual assaults on campus. For those schools, my office and this Administration have made it clear that the time for delay is over." Lhamon emphasized the guidance contained in the April 2011 Dear Colleague Letter, stating that "The 2011 DCL affirms that the Title IX requirements for sexual harassment and OCR's 2001 guidance on sexual harassment also apply to sexual violence and lays out the specific Title IX requirements applicable to sexual violence. . . . "It also provides guidance and examples about key Title IX requirements and how they relate to sexual violence – including schools' obligations to have a policy against sex discrimination, the important role of Title IX coordinators, and the requirements for a school's grievance procedures to be prompt and equitable." Lhamon also emphasized a commitment to make OCR enforcement activity more transparent, including making public the list of institutions being investigated, and noted that "this new transparency adds an important tool to the culture change . . , and beginning a new era when our collective disapprobation of sexual violence holds fuller salience and effect" at learning institutions. Finally, she stated that "This Administration is committed to using all its tools to ensure that all schools comply with Title IX . . ." She further told the Committee: "If OCR cannot secure voluntary compliance from the recipient, OCR may initiate an administrative action to terminate and/or refuse to grant federal funds or refer the case to the DOJ to file a lawsuit against the school."

### H. Lincoln-Sudbury's Ongoing Concerns About Its Reputation and Public Standing in Light of OCR's Open Investigation and Unfavorable Media Reports That the District Was Under Investigation for its Mishandling of a Sexual Assault Claim.

118. In early February 2015, the District's legal counsel contacted OCR legal counsel because the District had not received any finding or closure letter from OCR. The District's counsel informed OCR counsel that *The Boston Globe* had contacted LSRHS and that the *Globe*

seemed to be aware of the investigation into Roe's Title IX complaint. OCR's legal counsel

brought to the District's counsel's attention a November 2014 article in *The Huffington Post*,

titled, "Department of Education Investigating K-12 School Districts for Mishandling Sexual

Assault." The article noted that not only were colleges facing heightened federal scrutiny about

their handling of sexual assault cases, but that a number of K-12 school districts were under

investigation by OCR for the same reason. The article included a list of 24 elementary and

secondary schools that were under investigation, including the OCR's investigation of Lincoln-

Sudbury for a complaint that was opened by OCR on June 18, 2014, the date on which Roe's

Title IX complaint was opened by OCR.

119. On February 18, 2015, an article titled "Feds looking into complaint related

to Lincoln-Sudbury assault claim," appeared in the MetroWest Daily News, noting that

the Department of Education was investigating a complaint related to a past sexual

assault claim at LSRHS.

120. On August 9, 2016, the District's counsel wrote to OCR counsel concerning

the fact that the investigation of Roe's Title IX complaint was still open. The District's

counsel was under the impression that closure was being recommended in the case, and

told OCR that the District wanted very much to resolve the matter because LSHRS

continued to appear in OCR's database as having an open Title IX sexual violence

complaint every time a member of the public submitted a FOIA request for information

concerning OCR's open secondary school cases.

121. On or about August 10, 2016, the District's legal counsel spoke with OCR counsel.

OCR legal counsel explained that OCR would likely issue a violation on the failure of LSRHS to

issue written notice to Roe about the results of the District's investigation into Roe's allegations,

and that OCR was working on requesting additional documents. According to OCR counsel's note to herself, the District's legal counsel "made clear that the district would like to do anything possible to resolve ASAP."

122. On October 13, 2016, the District's legal counsel wrote to OCR counsel expressing frustration with OCR's delay in resolving the investigation into Roe's Title IX complaint. The District's counsel described the history of the investigation and the District's responses to OCR's multiple data requests, including data requests for other cases of sexual assault allegations at LSRHS. The District's counsel described how, at OCR's request, the District had issued the October 1, 2015 Title IX decision letters to the three students (Doe, Roe and Student #2) of the outcome of the District's Title IX investigation to resolve the complaint, and that even though the District had complied with this request, OCR had not closed the investigation. Because of the delay, the District's counsel requested an in-person meeting with OCR counsel and superiors to discuss a timeline for resolution of the complaint and to approve any resolution or monitoring agreement under Title IX.

I.   **Lincoln-Sudbury Succumbs to OCR's Demand to Issue the August 24, 2017 Retraction Letter Vacating the October 1, 2105 Inconclusive Findings Letter as a Means of Placating OCR and as a Quid Pro Quo for OCR's Closure of the Investigation Into Roe's Title IX Complaint.**

123. On August 14, 2017, OCR counsel communicated with the District's counsel by phone about OCR's investigation into Roe's Title IX complaint. In an email that same day, OCR counsel wrote to the District's counsel:

> Attached please find an email that includes images of the original notice letters sent to the respondents on [] and []. Also attached is a pdf of the incorrect notice letters issued to the complainant and respondents on []. As I explained, the District originally provided *written* notice to the respondents but not to the complainant, so OCR asked that the District issue written notice to the complainant. The [] letters, however, stated that the investigations were inconclusive even though they were not. In an interview with [] on 12/14/15, she

acknowledged this error. At OCR's request, the District held off on issuing corrected notice.

At this time, OCR would like the District to issue corrected notice prior to OCR closing this complaint. The corrected notice to the recipients should rescind the [] letters and refer them to the findings as described in the original letters from [] and []. The corrected notice to the complainant should rescind the [] letter and explain the District's findings consistent with the findings described in the [] and [] letters. I would like to have my chief attorney review and approve the corrected notices prior to their issuing to ensure that OCR and the District are on the same page for this final round of notices. [italics in original)].

124. On August 21, 2017, the District's counsel sent OCR counsel copies of the draft notice of retraction letters via email.

125. On August 28, 2017, OCR counsel sent to the District's counsel the copies of the draft notice of retraction letters that OCR had edited.

126. On August 29, 2017, the District's counsel sent OCR counsel further drafts of the notice of retraction letters with edits that defendant Wong had made to them.

127. On August 30, 2017, OCR informed the District's counsel that the revised notice letters had been "approved by OCR," and thanked her for "checking before sending them out."

128. On or about August 30, 2017, Defendants Ramos and Elenbass sent the letter dated "August 24, 2017" described in paragraph 78 above to Doe and his parents rescinding the October 1, 2015 letter.

129. On September 6, 2017, the District's counsel sent to OCR counsel copies of the notice of retraction letters that had been sent to Doe, Roe and Male Student #2.

130. On September 7, 2017, the day after OCR received copies of the District's letters that rescinded the October 1, 2015 inconclusive findings letter, OCR issued a letter to defendant Wong, copying the District's legal counsel, informing Wong that OCR had concluded its investigation of Roe's Title IX complaint, and reporting the results of the investigation. In this

letter, OCR described that the District had made a determination based on a preponderance of the evidence that the sexual misconduct did occur, that the District issued inaccurate notice letters to Roe, Doe and Student #2) on October 1, 2015, that at OCR's request, the District rescinded the incorrect notices and provided corrected notices dated August 24, 2017, and that the District's delay in issuing the recission letter dated August 24, 2017 was at OCR's request pending conclusion of its investigation.

**J.  Lincoln-Sudbury Retracted the October 1, 2015 "Inconclusive Findings" Letter Even Though the District Believed That the October 1, 2015 Letter Was an Accurate Statement of its Title IX Findings.**

131. Defendants Ramos, Elenbaas and Wong, under the advice and direction of the District's counsel, allowed the August 24, 2017 letter to be sent out to Doe and his parents despite knowing that the October 1, 2015 letter was an accurate statement of the District's Title IX investigation findings with respect to Roe's allegations against Doe.

132. On February 6, 2017, counsel for Roe sent a demand letter to Defendant Wong, demanding $350,000 in damages from the District for violations of Doe's rights under Title IX, 42 U.S.C. § 1983, and various state tort claims, along with a copy of a draft civil complaint.

133. On April 24, 2018, Roe filed a lawsuit in the United States District Court for the District of Massachusetts, against Lincoln-Sudbury Regional School District, Bella Wong, Aida Ramos and Leslie Patterson, alleging violations of, and claims under, Title IX, 42 U.S.C. § 1983, and Massachusetts state tort law (*Jane Roe v. Lincoln-Sudbury Regional School District, Bella Wong, Aida Ramos and Leslie Patterson,* Dkt. No. 1:18-CV-10792-FDS)  ("Roe's Civil Action"). As of the date of this complaint Roe's case is still pending.

134. In connection with Roe's civil action, on June 27, 2019, defendant Ramos was deposed. In her deposition, Ramos was asked about the second paragraph of the October 1, 2015 Letter sent to Roe.

> Q.      And the second paragraph, you state, "After conducting thorough interviews and review of reports, Lincoln-Sudbury's investigation has been determined inconclusive. The District was not able to reliably determine whether or not the alleged incident reported by [Redaction] actually occurred as described."
>
> Q.      Did you believe that to be accurate on October 1, 2015?
>
> A.      Yes.
>
> Q.      Why?
>
> A.      There were very confusing different stories of the events that [redaction] shared with us.
>
> Q.      I believe you agreed with me earlier that you agreed with the conclusion of Ms. Burke, that something of an egregious nature had occurred.
>
> A.      Something happened, yes. But what exactly happened, we couldn't pinpoint what exactly happened.

Roe's Civil Action, 6/27/2019 Ramos Deposition at pp. 103-104.

135. Later in her deposition in Roe's Civil Case, defendant Ramos was asked about the August 24, 2017 letter that she and defendant Elenbaas sent out. Ramos testified that the August 24, 2017 letter was sent out because OCR would not close out the investigation of Roe's Title IX complaint unless the letter was sent.

136. Ramos was asked about the contradictory language contained in the October 1, 2015 letter (describing their Title IX investigation's inconclusive findings) and the language in the August 24, 2017 letter (stating that the October 1, 2015 letter incorrectly reported their findings).

> Q.      So it was incorrect to say that the investigation was inconclusive?

A.      The Office of Civil Rights ask to us write this letter, and then when the case kept moving forward from one person to the other, the second person ask us to resend the letter and send this letter. So these two letters came as an advisement from OCR for us to send this letter to the [redaction].

Q.      And is it your understanding that OCR directed what the content of each letter should be?

A.      Correct.

Q.      So OCR advised you, in October of 2015, to send a letter saying it was inconclusive?

A.      Advised by our attorney.

Q.      So OCR advised you, in October of 2015, to send a letter to the [redaction] stating that the investigation had been inconclusive?

A.      Correct. To our attorney. Not to me directly.

Q.      Right. Did you ever have any discussion with anybody at OCR about sending these letters?

A.      No.

Q.      So anything you did was in response to your attorney?

A.      Correct.

Q.      Between October of 2015 and August of 2017, did you have any other communications from OCR about what they wanted you to send to the [redaction]?

A.      Me directly, no.

Q.      Or are you aware of any other communications that OCR had with your attorney?

A.      The attorney will call OCR and ask for closure, like: Close it; whatever we need to do, we'll do, just close it. But they kept saying it's still sitting somewhere.

Roe's Civil Action, 6/27/2019 Ramos Deposition at pp. 109-110.

**K.  Lincoln-Sudbury's Failure to Adequately Train and Supervise Employees in Title IX Matters.**

137. During her deposition in Roe's Civil Action, Ramos was asked, when she started working at LSRHS in 2013, what policies the District had regarding conducting Title IX investigations. Ramos testified as follows:

Q.   We won't go through all of these, but I wanted to ask you, if you look at topic four, did the district have, -- when you arrived in 2013, did the district have any policies in place as far as how to conduct a Title IX investigation?

A.   They somewhat did. The director of student services at the time had the responsibility of doing - - oh, maybe not. Maybe we changed it when we got there. And it was revised by the time I got there.

  When I got there it was revised again because there was a lot of changes in the administrative, in the administration at that time.

Q.   Was there a written policy?

A.   No. We followed the TitleIX.gov. protocol.

Q.   So the district – correct me if this is an overstatement. So the district's policy was to follow the government protocol?

A.   Yeah.

Q.   Okay.

A.   Yes.

Q.   Did that include the Dear Colleague Letter, when you were employed at Lincoln-Sudbury?

A.   I read the Dear Colleague Letter later.

Roe's Civil Action, 6/27/2019 Ramos Deposition at pp. 18-19.

138. Ramos also testified that when she arrived at LSRHS in 2013, there was a preexisting Power Point related (Exhibit 38 to Ramos 6/27/2109 Deposition) that was used for mandated training of staff. Roe's Civil Action, 6/27/2019 Ramos Deposition at 118-119. The

portion of this Power Point presentation concerning Title IX references the District's prior "Title

IX Coordinator, Nancy O'Neill," and does not contain, or refer to, any procedures or protocols

for conducting a Title IX investigation, nor does it even refer any procedures set forth  in the

OCR's Dear Colleague Letter.

139. Doe and his parents were never informed that the District's policies for conducting its

Title IX investigations could be found on any website.

**L.  Lincoln-Sudbury Continues to Maintain Records in Its Files Concerning
Plaintiff's Doe's Discipline and Suspension.**

140. Upon information and belief, the District continues to maintain records concerning

John Doe in its files in hard copy and electronic format that mention or refer to the allegations

made against Doe by Roe, the adverse findings the District made against Doe that he was "an

instigator of physical and sexual harassment" and the school suspension that was imposed on

him, including, but not limited to, the following records:

(a)  Emails and other documents describing the allegations and charges against Doe;

(b) The December 2, 2013 charge letter;

(c) The December 6, 2013 decision letter;

(d) The August 24, 2017 retraction letter;

(e) A disciplinary summary; and,

(e) Documents and other information compiled by Lincoln-Sudbury in the course of its

Title IX investigation and/or deliberations concerning the allegations made by Roe against Doe.

141. In April 2017, Defendant Patterson was contacted by, and communicated with, a

representative of a college to which Doe had applied for admission concerning Doe' application

for admission on which Doe had indicated that he had been suspended while he was a student at

LSRHS.

## COUNT 1

### Violation of Fourteenth Amendment Due Process
### and Statutory Rights Under Title IX
### (42 U.S.C. § 1983--Against Defendants Wong, Ramos, Elenbaas, Patterson,
### Medeiros, Crawford and Burke in Their Individual and Official Capacities)

142. Plaintiff John Doe repeats and realleges each and every allegation hereinabove as if fully set forth herein.

143. Title 42 U.S.C. § 1983 creates a private cause of action for persons who are denied a federal constitutional or statutory right by a "person" acting under color of state law.

144. At all times material to this Complaint, the Lincoln-Sudbury Regional School District. the Lincoln-Sudbury Regional School Committee, and the Lincoln-Sudbury Regional High School were state actors.

145. At all times material to this Complaint, Defendants Wong, Ramos, Elenbaas, Patterson, Medeiros, Crawford and Burke were acting under color of Massachusetts state law.

146. The Fourteenth Amendment to the U.S. Constitution provides that no state shall deprive any person of life, liberty, or property without due process of law. Procedural due process protects an individual from deprivations of protected interests that are unfair.

147. Plaintiff Doe has a protected property interest in pursuing his education, as well as future educational and employment opportunities and occupational liberty, of which he cannot be denied without due process.

148. Plaintiff Doe has a protected interest in his good name, reputation, honor, and integrity, which cannot be impugned without due process.

149. Plaintiff Doe has a constitutional due process right to be free from arbitrary disciplinary decisions.

150. Plaintiff Doe was entitled to notice, a meaningful opportunity to be heard, and process commensurate with the seriousness of the allegations and potential discipline, sanctions, and repercussions he was facing.

151. Plaintiff Doe was entitled to fundamentally fair procedures to determine whether he was responsible for being an instigator of physical and sexual harassment.

152. Defendant Lincoln-Sudbury Regional School District and the individual Defendants were obligated under the Fourteenth Amendment to provide Doe with due process in the District's investigations, disciplinary proceedings, and decisions concerning allegations of sexual misconduct.

153. The defendants acting under color of state law and in their individual capacities, violated Plaintiff Doe's constitutional rights to due process by failing to provide him with adequate notice, and a fundamentally fair and reliable investigation, hearing, decision, and appeal process. They also deprived him of his federal statutory rights as a respondent in Title IX proceedings.

154. Plaintiff Doe was denied his rights to due process, including his Title IX rights, as a result of the Defendants' actions and omissions which include the following:

(a) The Defendants never gave Plaintiff Doe timely notice that the District's investigation into Roe's allegations, including the December 5, 2013 hearing, was a Title IX proceeding or that Doe could be found  responsible for "sexual harassment" under Title IX.

(b) The Defendants' investigation, including the December 5, 2013 hearing, was a Title IX proceeding, as described repeatedly in numerous communications made by the District to OCR, and as reflected in the letters of October 1, 2015 and August 24,

2017.

(c)  Even though the Discrimination Grievance Procedures contained in the District's
2013 Handbook applied to Title IX gender discrimination proceedings, the
Defendants failed to provide Plaintiff Doe with the procedural due process
protections to which he was entitled, as described in the Grievance Procedures,
including, but not limited to, the requirement that "[a]ll hearings and investigations
must follow due process procedures that guarantee that both parties will have the
right and opportunity to present evidence and witnesses and to question witnesses at
all steps."

(d)  The District's 2013 Handbook did not give notice to Plaintiff Doe of the standard of
proof that applied to the December 5, 2013 proceedings.

(e)  The December 2, 2013 charge letter did not give notice to Plaintiff Doe of the
standard of proof that applied to the December 5, 2013 proceedings.

(f)  The December 2, 2013 charge letter informing Plaintiff Doe of the allegations made
by Roe only gave notice to Plaintiff Doe that his alleged offenses were "<u>physical
assault</u> and <u>inappropriate sexual behavior</u>." The notice letter did not allege "<u>sexual
harassment</u>," which the 2013 Handbook describes as a form of discrimination, which,
at minimum, entitled Doe to the process set forth in the Discrimination Grievance
Procedures.

(g)  The December 6, 2013 decision letter found that Plaintiff Doe was "an instigator of . .
. sexual harassment," even though the December 2, 2013 charge letter only noticed an
allegation of "inappropriate sexual behavior."

(h)  The December 6, 2013 decision letter in which the Defendants found that Plaintiff

38

Doe was an "instigator of physical and sexual harassment" did not state what standard of proof was used to evaluate the evidence, nor did it state that the determination expressed in that letter had been made using the preponderance of evidence standard, as required by the guidance in OCR's 2011 Dear Colleague Letter.

(i)   The December 6, 2013 decision letter stated that Plaintiff Doe was "an instigator of both physical and sexual harassment" even though the District told OCR that the Housemasters had determined after the December 5, 2013 hearing that, due to conflicting evidence and information regarding the events of November 1, 2013, there were insufficient grounds to determine whether Doe had sexually harassed, sexually assaulted, physically assaulted, or engaged in consensual activity with Roe.

(j)   The August 24, 2017 letter retracting the October 1, 2015 Title IX finding that the District could not reliably determine whether or not the incident alleged by Roe had occurred was because of the Defendants' and the District's concerns about the District's reputation and public standing in light of unfavorable media attention and publicly available information from OCR showing that the District was under continuing investigation for a Title IX sexual violence complaint.

(k)   The Defendants issued the District's August 24, 2017 retraction letter because of pressure to meet OCR's demands that the District retract the October 1, 2015 inconclusive findings letter as a *quid pro quo* for OCR's closure of its investigation into Roe's Title IX complaint.

(l)   The District's August 24, 2017 retraction letter was issued even though the Defendants knew that the October 1, 2015 letter was an accurate statement of the findings of their Title IX investigation.

(m) Despite the requirement in the 2013 Handbook's Discrimination Grievance Procedures that both parties would be notified of decisions made by the School Committee in any appeals taken by a party, the Defendants never informed Doe or his parents that Roe had appealed the October 1, 2015 inconclusive findings to the School Committee and that the School Committee had informed Roe's parents that the Committee was satisfied that the District had conducted their investigation in a manner that was appropriate and non-discriminatory.

(n) The Defendants' issuance of the August 24, 2017 letter disregarded the accurate findings of the District's Title IX investigation as expressed in the District's October 1, 2015 decision letter and in the many pre-August 2017 statements that the District made to OCR justifying the inconclusive findings described in the October 1, 2015 letter.

(o) Prior to sending the District's August 24, 2017 retraction letter, the Defendants never notified Plaintiff Doe or his parents that they intended to rescind the October 1, 2015 inconclusive findings letter.

(p) Plaintiff Doe was deprived Doe of any meaningful opportunity to be heard before the issuance of the District's August 24, 2017 retraction letter.

155. The Defendants acted intentionally, willfully, recklessly or with callous and deliberate indifference to Plaintiff Doe's constitutional and statutory rights.

156. As a result of the actions of Defendants Wong, Ramos, Elenbaas, Patterson, Medeiros, Crawford and Burke, Plaintiff Doe's constitutionally protected rights to due process and his statutory rights under Title IX have been, and continue to be, violated.

157. The Defendants unlawful conduct continues because Lincoln-Sudbury continues to maintain and hold records and documents in the District's files that reference the adverse findings and Plaintiff Doe's suspension, all of which are the product of the Defendants' violations of due process and Title IX.

158. As a direct and proximate result of these due process violations, Plaintiff Doe has suffered, and continues to suffer, ongoing substantial injury.

159. This injury includes substantial monetary damages. Plaintiff Doe was suspended from school for sixteen days. He was denied participation in extracurricular activities, including sports. He suffered damage to his reputation and public humiliation when it became known within the Lincoln-Sudbury school community that he had been accused by Roe and it had been determined that he was "an instigator of both physical and sexual harassment."  The continued maintenance of the adverse findings and suspension records in Lincoln-Sudbury's files are an impediment to his continued pursuit of his career and possible future educational opportunities and have resulted in damages yet to be determined and presently incalculable.

160. Plaintiff Doe is entitled to punitive damages because the Defendants' conduct involved intentional, reckless, or callous indifference to Plaintiff Doe's federally protected rights.

161. Pursuant to 42 U.S.C. § 1988, Plaintiff Doe is entitled to his attorneys fees incurred in bringing this action.

162. Alternatively, if Defendant Ramos accurately described in her deposition testimony in Roe's Civil Case that, in 2013, the District had no written protocol for conducting a Title IX investigation and relied on some unspecified protocol on a website titled "TitleIX.gov," the Defendants violated Plaintiff Doe's due process rights by failing to give Doe any notice of  the District's procedures for conducting a Title IX investigation, as required by Title IX and its

implementing regulations. The lack of any published process by the District, or any directive in

the 2013 Handbook to a website where the process could be found, deprived Doe of basic

fairness in the proceedings in which he was found to be an instigator of physical assault and

sexual harassment.

163. The failure to notify Plaintiff Doe of the District's Title IX process deprived him of

notice of the following: (a) how the investigation would proceed and on what schedule, (b) who

would conduct the investigation, (c) what information he was entitled to receive concerning the

allegations made against him, including statements made by his accuser and any witnesses, (d)

whether he was entitled to a hearing, and what rights he had at the hearing, including the right to

confront and cross-examine his accuser, the right present evidence and witnesses, and the right to

question witnesses, (e) the evidentiary standard under which the factfinder would judge the

allegations and evidence, and (f) the process for appeal.

## COUNT 2

### *Monell* Liability for Failure to Adequately Train and Supervise.
### (42 U.S.C. § 1983--Against Defendant Lincoln-Sudbury Regional School
### District and the Lincoln-Sudbury Regional School District Committee)

164. Plaintiff John Doe repeats and realleges the forgoing paragraphs as if fully set forth

herein.

165. The Fourteenth Amendment to the U.S. Constitution provides that no state shall

deprive any person of life, liberty, or property without due process of law. Procedural due

process protects an individual from deprivations of protected interests that are unfair.

166. Plaintiff Doe has a protected property interest in pursuing his education, as well as

future educational and employment opportunities and occupational liberty, of which he cannot be

denied without due process.

167. Plaintiff Doe has a protected interest in his good name, reputation, honor, and integrity, which cannot be impugned without due process.

168. Title 42 U.S.C. § 1983 creates a private cause of action for persons who are denied a federal constitutional or statutory right by a "person" acting under color of state law.

169. Municipalities and other bodies of government are "persons" for purposes of actions brought under § 1983.

170. At all times material to this Complaint, Defendants Wong, Ramos, Elenbaas, Patterson, Burke, Medeiros and Crawford were state actors working for the Lincoln-Sudbury Regional School District.

171. At all material times to the Complaint, Defendants Wong, Ramos, Elenbaas, Patterson, Burke, Medeiros and Crawford acted under color of state law.

172. On information and belief, at all times material to this Complaint, the District and the School Committee, through their legal counsel, had final policy making authority over Lincoln-Sudbury Regional High School's policies related to the District's Title IX procedures.

173. The District and the School Committee knew or should have known that the District's response to an allegation of sexual misconduct by a student must comply with federal law, including due process requirements, as well as published rules and guidance under Title IX.

174. The District and the School Committee failed to properly train and supervise District employees concerning the due process and Title IX requirements for investigating and addressing an allegation of sexual misconduct made against a student in at least the following respects:

(a) To the extent that the 2013 Student Handbook set forth procedures for addressing allegations of sexual misconduct made against a student, the District and the

School Committee failed to train its employees, including Defendants Wong, Ramos, Elenbaas, Patterson, Medeiros, Crawford and Burke, on the implementation of, and adherence to, such published procedures and failed to ensure that such procedures were followed.

(b) The District and the School Committee failed to implement any procedures or guidance setting forth the standard of proof to be used by decisionmakers when evaluating allegations of sexual misconduct made against a student.

(c) To the extent that Defendant Ramos accurately described in her deposition testimony in Roe's Civil Case that, in 2013, the District had no written protocol for conducting a Title IX investigation and relied on some unspecified protocol on a website titled "TitleIX.gov," the District and the School Committee failed to promulgate adequate protocols and procedures for responding to and addressing allegations of sexual misconduct made against a student to comply with due process requirements and Title IX requirements.

175. The District and the School Committee's failure ensure proper training and supervision of its employees as to the due process and Title IX requirements for addressing an allegation of sexual misconduct was pervasive, on-going, and wide-spread, at all times relevant to this complaint, and the District and the School Committee had actual or constructive knowledge of this failure, as well as final authority to implement proper training and supervision.

176. Given the above-described lack of training and supervision, it was foreseeable to the District and School Committee that an accusation of sexual misconduct would result in due process violations for the accused, and as set forth in Count 1, the District's response to Roe's

allegation against Doe in fact resulted in violations of Doe's constitutional due process rights, as well as his rights under Title IX.

177. As a direct and proximate result of these due process violations, Plaintiff Doe has suffered, and continues to suffer, ongoing substantial injury.

178. This injury includes substantial monetary damages. Plaintiff Doe was suspended from school for sixteen days. He was denied participation in extracurricular activities, including sports. He suffered damage to his reputation and public humiliation when it became known within the Lincoln-Sudbury school community that he had been accused by Roe and it had been determined that he was "an instigator of both physical and sexual harassment." The continued maintenance of the adverse findings and suspension records in Lincoln-Sudbury's files are an impediment to his continued pursuit of his career and have resulted in damages yet to be determined and presently incalculable.

179. Plaintiff Doe is entitled to punitive damages because the Defendants' conduct involved intentional, reckless or callous indifference to Plaintiff Doe's federally protected rights.

180. Pursuant to 42 U.S.C. § 1988, Plaintiff Doe is entitled to his attorneys fees incurred in bringing this action.

## COUNT 3

### *Monell* Liability: Lincoln-Sudbury Regional School District's Final Authority Over the Decision to Retract the October 1, 2015 Letter (42 U.S.C. § 1983 against Lincoln Sudbury Regional School District and the Lincoln-Sudbury Regional School District Committee)

181. Plaintiff John Doe repeats and realleges the forgoing paragraphs as if fully set forth herein.

182. On information and belief, at all times material to this Complaint, Defendants Lincoln-Sudbury Regional School District and the Lincoln-Sudbury Regional School District Committee  had final authority over student discipline decisions, Title IX investigations, and to negotiate through the District's legal counsel resolutions of complaints filed against the District with the Department of Education's Office of Civil Rights ("OCR"), alleging violations of Title IX by the District.

183. The District and the School Committee violated Plaintiff Doe's due process rights when, through its counsel, it:

(a)  directed defendants Ramos and Elenbaas to issue the August 24, 2017 letter retracting the October 1, 2015 letter, even though they knew that the October 1, 2015 decision letter accurately stated that the Title IX investigation was inconclusive and could "not reliably determine whether or not the alleged incident report by the compliant [sic] actually occurred as described."

(b) directed defendants Ramos and Elenbaas to issue the August 24, 2017 letter even though they knew that the portion of the December 6, 2013 letter stating that Doe was an "instigator of both physical and sexual harassment" was erroneous and could not have been based on a preponderance of the evidence standard.

(c) directed Defendants Ramos and Elenbaas to issue the August 24, 2017 letter because of concerns about the District's reputation and public standing in light of unfavorable media attention and publicly available information from OCR showing that the District was under continuing investigation for a Title IX sexual violence complaint.

(d) directed defendants Ramos and Elenbaas to issue the August 24, 2017 letter as a *quid pro quo* for OCR's agreement to close its investigation of the District based on Roe's Title IX complaint.

184. These actions were intentional, willful, reckless or with callous and deliberate indifference to Plaintiff Doe's constitutional and statutory rights.

185. As a direct and proximate result of these due process violations, Plaintiff Doe has suffered, and continues to suffer, ongoing substantial injury.

186. This injury includes substantial monetary damages.  The continued maintenance of the adverse findings and suspension records in Lincoln-Sudbury's files are an impediment to his continued pursuit of his career and have resulted in damages yet to be determined and presently incalculable.

187. Plaintiff Doe is entitled to punitive damages because the Defendants' conduct involved intentional, reckless, or callous indifference to Plaintiff Doe's federally protected rights.

188. Pursuant to 42 U.S.C. § 1988, Plaintiff Doe is entitled to his attorneys fees incurred in bringing this action.

## **PRAYER FOR RELIEF**

WHEREFORE, John Doe respectfully requests that this Court:

a. Immediately order Defendants to reinstate the Title IX decision and findings set forth in the October 1, 2015 Title IX decision letter;

b.      Immediately order Defendants to expunge all other documents in Plaintiff Doe's educational and disciplinary records that are maintained by the District that include or make reference to (1) Roe's allegations against John Doe, including any charges, (2) any adverse findings made against Doe, and (3) any sanctions imposed on Doe, including Doe's suspension from school;

c.      Immediately restrain, and permanently enjoin Defendants from making any future notation of any charges, interim restrictions, findings and/or sanctions on John Doe's transcript, education record, and disciplinary record;

d.      Issue a Declaration pursuant to 28 U.S.C. § 2201 that, by engaging in the actions and occurrences alleged in this Complaint, including the continued maintenance of John Doe's file that contains references to the results of the December 6, 2013 disciplinary hearing and the August 24, 2017 letter, the Defendants in their official or individual capacities, or both, willfully, recklessly or with callous indifference have violated and continue to violate Doe's Fourteenth Amendment rights to due process and protections afforded him under Title IX.

e.      Award compensatory and punitive damages against the Lincoln-Sudbury Regional School District for reckless or intentional violations of John Doe's due process and Title IX rights.

f.      Award compensatory and punitive damages against each of the individual defendants in their individual capacities pursuant to 42 U.S.C. § 1983 for violations of John Doe's rights under the federal constitution and statute, acting intentionally and with callous indifference; and,

g.      Award John Doe his attorney's fees and costs and such other relief as the Court

deems proper and just.

## **JURY DEMAND**

Plaintiff hereby claims and demands a trial by jury on all claims so triable.

DATED: August 21, 2020

Respectfully submitted,

*/s/ Philip G. Cormier*
Philip G. Cormier
BBO #554515
pc@gscfboston.com

*/s/ Benjamin Brooks*
Benjamin Brooks
BBO #661763
bb@gscfboston.com

/s/ *Michael R. Schneider*
Michael R. Schneider
BBO #446475
Good Schneider Cormier & Fried
83 Atlantic Avenue
Boston, MA 02110
Tel. 617-523-5933
Fax. 617-523-7554

*Attorneys for Plaintiff John Doe*